**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

RUSSELL COBLE,

       Plaintiff,

v.                                      No. CIV 11-0109 RB/RHS

THE GEO GROUP, INC., Northeast New
Mexico Correctional Facility, CLAYTON
POLICE DEPARTMENT, and RAUL
GARCIA and SCOTT JULIAN, in their
individual capacities,

       Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants Clayton Police Department ("CPD"),

Raul Garcia, and Scott Julian's ("CPD Defendants") Motion to Dismiss Plaintiff Russell Coble's

claims against them (Doc. 6), filed on March 10, 2011. Having considered the pleadings, the relevant

law, and otherwise being fully advised, the Court GRANTS IN PART and DENIES IN PART CPD

Defendants' Motion to Dismiss.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint in whole

or in part for failing to state a claim upon which relief is available. In considering Rule 12(b)(6)

motions, courts must look within the four corners of the complaint, accept all well-pleaded factual

allegations as true and determine if the plaintiff is plausibly entitled to relief. *Ashcroft v. Iqbal*, ---

U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1191 (10th Cir. 2009)

(citations omitted); *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003) (citation omitted).

Without weighing the evidence, the court must evaluate whether it is plausible, and not merely

possible, that the plaintiff is entitled to relief under the relevant law. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008).

While the complaint need not include "detailed factual allegations," the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted). The factual allegations must also suffice to "inform the defendants of the actual grounds of the claim against them." *Robbins*, 519 F.3d at 1248. The degree of specificity required depends on the nature of the complaint, but generally the complaint must specify the time, place, and person involved in the matter at issue. *Id.* (citations omitted).

## II.    FACTUAL BACKGROUND

The following account of relevant facts is derived from Coble's allegations, which have not been substantiated at this point in the litigation. Assuming that these allegations are true for the purpose of analyzing this Motion to Dismiss, the incidents leading to Coble's allegations against the CPD Defendants began on August 8, 2010. On that date and at all times relevant to Coble's allegations against these Defendants, Coble was an employee of the Northeast New Mexico Correctional Facility ("NENMCF"). (Doc. 1 at ¶ 11.)

On the evening of August 8, 2010, Coble served as the designated driver for a group of friends and acquaintances who went to a bar in Dumas, Texas. (*Id.* at ¶¶ 13-15.) Coble later discovered that one of the members of the group was an ex-felon who had been incarcerated previously on drug charges and who may have had 0.5 grams of cocaine in his possession on that night. (*Id.* at ¶¶ 18, 30.)

Weeks later, on September 26, 2010, NENMCF contacted CPD and requested that an officer come to the facility. (*Id.* at ¶ 19.) Apparently, NENMCF suspected that visitors were attempting to

bring drugs to the inmates. (*Id.*) Garcia, a CPD officer,[1] responded with a narcotics canine and walked through the NENMCF parking lot. (*Id.* at ¶ 20.) The dog alerted on Coble's vehicle, a truck, and Coble consented to a search. (*Id.* at ¶¶ 20-21.) Though no drugs were found in the truck, the dog became agitated during the search, causing damage by scratching the cab, bed, and right side of the truck. (*Id.* at ¶¶ 21, 23.) Coble alleges that the canine was not adequately trained and that Garcia did not know how to handle him. (*Id.* at ¶ 22.)

Two days later, Coble's mother went to CPD and spoke with Garcia and Julian, the police chief, in an attempt to obtain restitution. (*Id.* at ¶ 24.) The officers stated that CPD was not responsible for any damage to the truck. (*Id.*) Coble also spoke with Julian and the Mayor of Clayton at an unspecified point "regarding the unlawful use of the K-9 to cause damage to Coble's vehicle . . . ." (*Id.* at ¶ 82.)

Prior to October 11, 2010, Garcia told members of the Clayton community, including officers of the Union County Sheriff's Department, that Coble was a drug dealer, that he was going to be arrested, and that he was distributing cocaine in NENMCF. (*Id.* at ¶ 31-32.) Coble asserts that these statements are false. (*Id.*) Furthermore, throughout the late summer and fall of 2010, Garcia waited for Coble outside of his home and followed him on several occasions. (*Id.* at ¶ 33.) Coble states that Garcia lacked reasonable suspicion to believe that Coble was engaging in any illegal activities. (*Id.*)

Coble was terminated from NENMCF on November 16, 2010. (*Id.* at ¶ 40.) Coble filed this civil action on February 3, 2011, asserting a number of claims arising under 42 U.S.C. § 1983 against

---

[1] This is not explicitly stated in Coble's Complaint, but it is implied. (*See* Doc. 1 at ¶ 20.) Moreover, the CPD Defendants have acknowledged that this allegation may be inferred from the Complaint. (Doc. 6 at 2.)

the CPD Defendants.[2] (*Id.* at ¶¶ 41-89.) Coble seeks compensatory damages, punitive damages, costs, attorney fees, pre-judgment interest and post-judgment interest from the CPD Defendants. (*Id.* at ¶¶ 115-120.) The CPD Defendants have moved to dismiss all claims against them pursuant to Rule 12(b)(6). (Doc. 6.)

## III.    ANALYSIS

### A.    Prerequisites for Asserting 42 U.S.C. § 1983 Claims

As a preliminary matter, a plaintiff must demonstrate two specific elements in order to bring a lawsuit under 42 U.S.C. § 1983. The plaintiff must allege that while acting under color of state law, the defendant deprived him of federally protected rights. 42 U.S.C. § 1983; *see also Muscogee (Creek) Nation v. Okla. Tax Comm'n*, 611 F.3d 1222, 1234 (10th Cir. 2010). For purposes of this Motion to Dismiss, the CPD Defendants do not contest that they are state actors or that the actions Coble complains of were taken under color of state law.

### B.    Count I: Procedural Due Process Claim

Coble alleges that his right to procedural due process was violated by two separate actions on the part of some or all of the CPD Defendants. First, he asserts that his property interest in his vehicle was disrupted by Garcia and the canine's actions in conducting the search and that he was denied any post-deprivation procedure to obtain restitution by Julian, Garcia, and CPD. (Doc. 1 at ¶¶ 43-47.) The CPD Defendants argue that Coble's interest in a vehicle free from damage is not constitutionally recognized, that Coble was not denied procedure because Coble himself did not request any procedure, and that Coble has failed to allege that these actions were pursuant to a policy or procedure of CPD. (Doc. 6 at 6.) Secondly, Coble accuses Garcia of depriving him of his liberty

---

[2] Coble also makes claims against NENMCF related to his termination. These claims are not at issue at this point. The Court will only address Coble's claims against the CPD Defendants.

interest in his reputation by publicly labeling him a drug dealer. (Doc. 1 at ¶¶ 48-49.) The CPD Defendants contend that individuals do not possess a constitutionally-protected liberty interest in their reputation. (Doc. 6 at 6-7.)

To state a claim for a procedural due process violation, a plaintiff must first demonstrate that he possessed a constitutionally cognizable liberty or property interest. *Teigen v. Renfrow*, 511 F.3d 1072, 1078 (10th Cir. 2007) (quoting *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000)). "To be constitutionally cognizable, 'the interest must rise to more than an abstract need or desire and must be based on more than a unilateral hope.'" *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010) (quoting *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)).

Once the plaintiff meets this threshold, he must demonstrate that (1) he was deprived of that interest (2) without constitutionally sufficient procedural protections. *Id.* at 1200 (citation omitted); *Narotzky v. Natrona Cnty. Mem. Hosp. Bd. of Trs.*, 610 F.3d 558, 564 (10th Cir. 2010) (citing *Stears v. Sheridan Cnty. Mem. Hosp. Bd. of Trs.*, 491 F.3d 1160, 1162 (10th Cir. 2007)). The necessary procedural protections are not set in stone, but the fundamental requirement of due process is that an individual be given a chance "to be heard at a meaningful time and in a meaningful manner." *PJ ex rel. Jensen*, 603 F.3d at 1200 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Generally, this means that a person is entitled to some sort of a hearing prior to the deprivation of a protected interest. *Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J*, 464 F.3d 1182, 1189 (10th Cir. 2006) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 570 n.7 (1972)). However, where the deprivation is caused by a random, unauthorized act, predeprivation process is impractical and due process is satisfied so long as there is a meaningful postdeprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).

1.    *Property Interest in Vehicle (CPD Defendants)*

With regard to the damage to Coble's truck, Coble has failed to state a claim upon which relief can be granted. The purpose of procedural due process related to property interests is to protect a person's "use and possession of property from arbitrary encroachment–to minimize substantively unfair or mistaken deprivations of property . . . ." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972). This protection "reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Id.* (citing *Lynch v. Household Fin. Corp.*, 405 U.S. 538, 552 (1972)). The property interests protected by procedural due process are broad in definition and include a range of entitlements conferred by state law. *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 789-90 (2005) (citations omitted) (describing that protected property interests include both the ownership of tangible goods and the entitlement to a variety of benefits and services). Courts must look to state law to determine the dimensions of property interests that are protected by the Constitution. *Roth*, 408 U.S. at 577.

Coble undoubtedly has a property interest in his vehicle. Cases in which a plaintiff claimed a deprivation of a property interest based on the seizure or impoundment of a vehicle have consistently held that individuals have a protected property interest in their vehicles. *See, e.g.*, *Coleman v. Watt*, 40 F.3d 255, 260-61 (8th Cir. 1994); *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir. 1982); *Stypmann v. City & Cnty. of San Francisco*, 557 F.2d 1338, 1342 (9th Cir. 1977). But Coble has not alleged that the actions of Garcia and the narcotics dog deprived him of the use of the vehicle by rendering it inoperable. The issue here is far narrower: whether Coble had a protected property interest in a vehicle free from physical damage and whether that interest was then deprived by the dog search that resulted in severe scratching to the right side, cab, and interior of the vehicle.

However, this Court need not determine whether this narrow issue states a deprivation of a protected property interest because it is clear that procedures are available to provide Coble an opportunity to be heard in a meaningful manner. It is undisputed that predeprivation notice and hearing would be impractical here, as the conduct of Garcia and the dog in causing damage during the course of searching Coble's vehicle was an unauthorized and random occurrence. Thus, the CPD Defendants did not interfere with Coble's right to procedural due process so long as "a meaningful postdeprivation remedy for the loss is available." *Hudson*, 468 U.S. at 533.

In *Hudson*, the Court found that the availability of a lawsuit in tort under state common law provided an adequate remedy for an inmate whose property was destroyed by a corrections officer. *Id.* at 534-35. In another case with substantially similar facts to those at issue here, several plaintiffs sued the city of Chicago alleging that their vehicles were impounded and, while impounded, damage occurred, thus depriving them of their right to procedural due process. *Gable v. City of Chicago*, 296 F.3d 531, 534-36 (7th Cir. 2002). The Seventh Circuit held that the plaintiffs were deprived of property interests but that adequate postdeprivation remedies were available under Illinois law. *Id.* at 539-40. Those remedies included obtaining compensation for damages via an action of bailment or an action for replivin. *Id.* at 540.

Here, Coble has merely alleged that his mother's request for reimbursement made to Garcia and Julian was denied. He has not alleged that New Mexico state law does not provide an action under which he can seek compensation for the damages to his truck or that the remedy provided would be inadequate. In fact, New Mexico expressly permits civil suits against law enforcement officers acting within the scope of their duties for property damages resulting from a violation of rights. N.M. STAT. ANN. § 41-4-12 (West 2011). While Coble may have preferred to have the CPD Defendants reimburse him for the damage immediately, he is not foreclosed from obtaining a

meaningful hearing on the matter. Just as in *Hudson* and *Gable*, the availability of a lawsuit under New Mexico law provides an adequate remedy for the damages about which Coble complains. Accordingly, Coble has failed to state a claim for a violation of procedural due process based on the damage to his truck.

## 2. *Liberty Interest in Reputation (Garcia)*

Coble's claim that his liberty interest in his reputation was deprived by Garcia's comments also fails to state a claim upon which relief may be granted. Though the Supreme Court has stated that a person may have a liberty interest in his good name and reputation, *Wisconsin v. Constantineau*, 400 U.S. 433, 437 (1971), an injury to reputation alone is not sufficient to state a due process deprivation. *Paul v. Davis*, 424 U.S. 693, 701 (1976). Rather, a due process claim must include a more tangible interest in addition to reputation, such as an allegation that a previously recognized right or status was altered by the defamation. *Id.* at 701, 708-09. The Tenth Circuit has made clear that damage to prospective employment opportunities cannot serve as that additional interest because it is also "too intangible to constitute deprivation of a liberty interest." *Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1559 (10th Cir. 1993) (citing *Phelps v. Wichita Eagle-Beacon*, 886 F.2d 1262, 1269 (10th Cir. 1989)).

The Tenth Circuit has set out a four-factor test where a plaintiff alleges the deprivation of a liberty interest based on defamation. *See Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994). To be actionable under procedural due process, a statement must (1) impugn the plaintiff's reputation, (2) be false, (3) be made in the course of terminating an employee or foreclose other employment opportunities and (4) be published. *Id.* (citations omitted). For the purpose of this Motion to Dismiss, the CPD Defendants contend that Coble failed to sufficiently allege the third element of this test.

The cases cited by Coble to support his claim almost entirely address stigmatizing published

statements made by an employer in the course of terminating the employee. (Doc. 11 at 6 (citing *Roth*, 408 U.S. at 573; *Sanchez v. Dubois*, 291 F. App'x 187, 191 (10th Cir. 2008) (unpublished); *Workman*, 32 F.3d at 478-81; *Ewers v. Bd. of Cnty. Comm'rs of Curry Cnty.*, 802 F.2d 1242, 1247 (10th Cir. 1986)).) Because the CPD Defendants did not employ Coble, these cases do not demonstrate that Coble's damaged reputation is an actionable harm to a liberty interest.

Coble's claim is quite similar to the claim raised by the plaintiff in *Spalsbury v. Sisson*, 250 F. App'x 238 (10th Cir. 2007) (unpublished). In that case, after the police filed criminal charges against the plaintiff based on a domestic dispute, the plaintiff filed suit alleging that the police damaged his reputation, caused him to lose his job, and foreclosed future employment opportunities by making false statements against him in connection with filing the charges. *Id.* at 247. The court found that the plaintiff had no colorable claim that the statements were false, but it also concluded that the plaintiff's claim failed because he could not allege that the statements were made incident to his termination. *Id.* at 247-48. The court stated that, though the charges levied against the plaintiff damaged his reputation and contributed to his termination, the police neither employed the plaintiff nor played a role in the termination decision. *Id.* at 248. Therefore, the court concluded, the asserted violation of the plaintiff's liberty interest based on his reputation failed to state a claim. *Id.*

Just as in *Spalsbury*, Coble was not employed by the CPD Defendants, and they played no role in the termination decision made by NENMCF. Thus, Coble has merely alleged that his reputation was harmed and not that the injury to his reputation was entangled with an additional interest. As a result, he has not stated an actionable liberty interest for purposes of due process.

### C.    Counts II and III: Fourth Amendment Claims (Garcia)

The Fourth Amendment right to be free from unreasonable search and seizure provides the constitutional basis for Coble's next claims, which arise from the damage to his vehicle during the

consensual search. (Doc. 1 at ¶¶ 52-66.) Coble complains that his truck and his person were unreasonably seized during the course of the search and that Garcia and the canine conducted the search in an unreasonable manner. (*Id.*) Coble raises these claims as two separate counts in his Complaint, one under the heading of "Unreasonable Search and Seizure" and the other under the heading of "Use of Excessive Force." (*Id.* at 8, 9.) The CPD Defendants argue that Coble's Fourth Amendment claims are vitiated by his consent and are not actionable because no physical force was used, a requirement for an excessive force claim. (Doc. 6 at 8-11.) Despite the headings within the Complaint, Coble's intent to challenge the seizures and the manner of the search is clear.

It is undisputed that Coble consented to the search at its inception. It is well established that searches and seizures authorized by consent are presumptively reasonable. *See Florida v. Jimeno*, 500 U.S. 248, 250-51 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)). As to Coble's claim that he and his vehicle were unreasonably seized, this principle is dispositive.[3] At the time of Coble's admitted consent to the search, he necessarily consented to remain with the vehicle and to not use the vehicle for the duration of the search. In fact, where consent is voluntarily provided, rendering the encounter consensual, a citizen is not seized for purposes of the Fourth Amendment. *See Florida v. Royer*, 460 U.S. 491, 497-98 (1983); *United States v. Hernandez*, 854 F.2d 295, 297-98 (8th Cir. 1988). Here, Coble provided consent and could have withdrawn his consent at any point, but he did not.[4] Coble does not contend that he or his vehicle were seized after the search was

---

[3] However, the Court does take issue with the CPD Defendants' statement in their Motion to Dismiss that "[a] search of private property is only unreasonable . . . if proper consent is not given." (*Id.* at 8 (citations omitted).) Were that true, any search would automatically be valid so long as the individual to be searched or seized consents and does not revoke his consent. (*See id.* at 9 (citation omitted).) As discussed below, the Fourth Amendment may be violated by a search conducted in an unreasonable manner, even where proper consent was given.

[4] Had Coble terminated his consent, Garcia may have had probable cause to continue the search, thereby seizing Coble for purposes of the Fourth Amendment.

completed. Due to Coble's consent, he and his vehicle were not seized for Fourth Amendment purposes during the search.

Coble further alleges that the search of his vehicle was unreasonable. Because it is not disputed that Coble consented to the search at its inception, Coble does not challenge the reasonableness of the initiation of the search. Instead, he claims that the search was conducted in an unreasonable manner and that the search exceeded the scope of his consent.

The scope of a person's consent is measured by an objective standard, and the question is "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251 (citations omitted). Here, Coble gave Garcia general consent to search his vehicle, and Coble does not allege that he affirmatively revoked consent during the course of the search. The issue, then, is whether the officer's actions here exceeded the scope of Coble's general consent.

A number of courts have considered whether general consent to search encompasses the destruction of personal property and have concluded that general consent does not extend to the intentional destruction of property. In *Jimeno*, the Supreme Court held that consent to search a vehicle may reasonably be construed as extending to opening closed containers within the vehicle which might contain the subject of the search. *Id.* The Court indicated, though, that it would likely be unreasonable to construe the same consent as permitting officers to break open a locked container. *Id.* at 251-52. In the context of a search where the police dismantled but did not destroy a vehicle pursuant to general consent to search, the Tenth Circuit held that "a failure to object to the continuation of a search indicates that the search was conducted within the scope of the consent given." *United States v. Santurio*, 29 F.3d 550, 553 (10th Cir. 1994) (citations omitted). The court noted that dismantling the vehicle was within the scope of the consent because the officer did not

11

"tear up" the vehicle. *Id.* Following that decision, the Tenth Circuit considered whether it was reasonable for officers to open a sealed can inside a suitcase with a tool, rendering the can "useless and incapable of performing its designated function . . . ." *United States v. Osage*, 235 F.3d 518, 521 (10th Cir. 2000). The court acknowledged *Santurio*'s holding but concluded that the destruction of sealed containers is not permitted by general consent. *Id.* at 520-21. Other circuits have similarly held that "general permission to search does not include permission to inflict intentional damage to the places or things to be searched." *United States v. Torres*, 32 F.3d 225, 231-32 (7th Cir. 1994) (quoting *United States v. Martinez*, 949 F.2d 1117, 1119 (11th Cir. 1992)).

Furthermore, to the extent that an otherwise legal search is conducted in an unreasonable manner, a violation of the Fourth Amendment occurs. "[I]t is well recognized that 'officers executing search warrants on occasion must damage property in order to perform their duty.'" *Cody v. Mello*, 59 F.3d 13, 16 (2d Cir. 1995) (quoting *Dalia v. United States*, 441 U.S. 238, 258 (1979)). However, excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment. *United States v. Ramirez*, 523 U.S. 65, 71 (1998) (citation omitted). Thus, before an officer can be liable for property damage resulting from a lawful search, the plaintiff must establish that the police acted unreasonably or maliciously in bringing about the damage. *See id.*

Coble has alleged that, in the course of the search, CPD's narcotics dog severely damaged his vehicle and Garcia did nothing to prevent that damage. He further states that the damage to his vehicle was unreasonable, intentional, and reckless. Based on the caselaw and at this stage in the proceedings, Coble has successfully alleged that the search was conducted in an unreasonable manner and that the damage inflicted in the course of the search exceeded the scope of his consent. Thus, Coble's allegation that the Fourth Amendment was violated by the search withstands the CPD Defendants' Motion to Dismiss.

12

D.       **Count IV: Substantive Due Process Claim (Garcia)**

In Count IV, Coble asserts that his Fourteenth Amendment right to substantive due process was violated when Garcia publicly labeled him a drug dealer. (Doc. 1 at ¶¶ 68-73.) The CPD Defendants argue that, like Coble's procedural due process claim based on reputation, this claim fails to assert a constitutionally-protected interest. (Doc. 6 at 12-13.) They also point out that Coble did not respond to this portion of the Motion to Dismiss and argue that this establishes his consent to grant the Motion. (Doc. 17 at 1-2.)

As an initial matter, this Court's Local Rules state that a complete failure to respond to a motion constitutes consent to grant the motion. D.N.M.LR-Civ. 7.1(b). However, the Tenth Circuit has held that "a district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response.'" *Issa*, 354 F.3d at 1177 (quoting *Reed v. Bennett*, 312 F.3d 1190, 1194 (10th Cir. 2002)) (alteration in original). Therefore, this Court must determine whether Coble has stated a claim upon which relief can be granted in spite of his failure to respond.

Substantive due process guarantees that the state and its officers will not deprive a person of life, liberty or property for an arbitrary reason, regardless of the fairness of the procedures used to effectuate the deprivation. *Mitchell v. City of Moore, Okla.*, 218 F.3d 1190, 1198 (10th Cir. 2000) (citing *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991)). Courts have been advised to guard against imprudently expanding the concept of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 271-72 (1994) (quoting *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992)). "The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." *Id.* at 272 (citing *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 847–849 (1992)).

The necessary elements of a substantive due process claim depend on whether the claim is

13

based on an executive or legislative act. *See Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1182 (10th Cir. 2009) (citations omitted). A plaintiff making a claim based on executive conduct, like the police officer action at issue here, must demonstrate that the conduct was outrageous and that the magnitude of harm was "truly conscience shocking." *Becker v. Kroll*, 494 F.3d 904, 923 (10th Cir. 2007) (quoting *Livsey v. Salt Lake Cnty.*, 275 F.3d 952, 957–58 (10th Cir. 2001); *Uhlrig v. Harder*, 64 F.3d 567, 573 (10th Cir. 1995)); *see also Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). It is not sufficient to simply allege that the officer intentionally caused harm by abusing governmental power. *Becker*, 494 F.3d at 922-23 (citations omitted).

Prior to reaching the "shocks the conscience" question, though, a court must find that the plaintiff has a liberty or property interest protected by the due process clause. *Potts v. Davis Cnty.*, 551 F.3d 1188, 1192, 1193 n.1 (10th Cir. 2009) (citation omitted). As discussed above in relation to procedural due process, Coble has not alleged a protected liberty interest in his reputation for purposes of due process. Because his claim fails to state a liberty interest for purposes of procedural due process, it also fails to state a liberty interest for the purpose of substantive due process. Coble's substantive due process claim is dismissed with prejudice.

### E.    Count V: Supervision and Training Claim (Clayton Police Department)

Coble claims that "CPD has maintained a policy or custom of failing to adequately supervise and train its officers with regards [sic] to the Fourth Amendment rights of citizens, appropriate and constitutional boundaries related to the use of excessive force, the proper constitutional methods for seizing property, and adequate procedures for the training and certification of K-9 narcotics dogs and their handlers." (Doc. 1 at ¶ 76.) He further alleges that CPD fails to supervise, train and reprimand officers who have violated citizens' constitutional rights. (*Id.* at ¶ 77.) He contends that his

14

constitutional rights were violated as a result and that CPD should have known that inadequate training in these areas would lead to constitutional violations. (*Id.* at ¶¶ 78-79.) The CPD Defendants state that Coble failed to plead the required elements to establish CPD's liability for inadequate training.[5] (Doc. 6 at 14.)

Government officials or entities, including police departments, cannot be held liable for the actions of their employees under a theory of *respondeat superior*. *Iqbal*, --- U.S. at ----, 129 S. Ct. at 1948 (citations omitted); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91, 693-94 (1978). To successfully state a claim against a municipality under 42 U.S.C. § 1983, then, a plaintiff must allege that (1) a constitutional deprivation was directly caused by the municipality's failure to train and/or supervise its employees and (2) the failure to train and/or supervise reflected deliberate indifference to the constitutional rights of the persons with whom the employees come into contact. *D.T. by M.T. v. Indep. Sch. Dist. No. 16,* 894 F.2d 1176, 1192 (10th Cir. 1990) (citing *Canton v. Harris*, 489 U.S. 378, 392 (1989); *Okla. City v. Tuttle*, 471 U.S. 808, 825 n.8 (1985)).

As discussed above, Coble has failed to state claims for constitutional violations against the individual officers under procedural due process, substantive due process, and unreasonable seizure theories. For these counts, then, there can be no liability against CPD. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1154-56 (10th Cir. 2001) (citations omitted). Thus, Coble's sole viable claim for failure to train or supervise must be based on his claim that the search of his vehicle violated the Fourth Amendment.

In the context of an excessive force case, the Tenth Circuit has held that, to establish

---

[5] The CPD Defendants also argue that Coble consented to the dismissal of this count by failing to respond to the CPD Defendants' argument in their Motion to Dismiss. (Doc. 17 at 1-2.) For the same reasons stated previously, this contention is without merit. The Court will address the merits of Coble's allegation against CPD for failure to train and supervise.

governmental liability for inadequate training of officers,

> [A] plaintiff must show (1) the officers exceeded constitutional limitations on the use of force; (2) the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal; (3) the inadequate training demonstrates a deliberate indifference on the part of the city toward persons with whom the police officers come into contact[;] and (4) there is a direct causal link between the constitutional deprivation and the inadequate training.

*Allen v. Muskogee, Okla.*, 119 F.3d 837, 841–42 (10th Cir. 1997) (citing *Canton*, 489 U.S. at 389–91; *Zuchel v. City and Cnty. of Denver*, 997 F.2d 730, 734–35 (10th Cir. 1993)). Because Coble's Fourth Amendment allegations involve the unreasonable conduct of a search, including the infliction of intentional damage, they are substantially similar to a claim of excessive use of force. Thus, this test applies equally well to Coble's remaining claims.

Coble has alleged that Garcia exceeded the constitutional limitations of the Fourth Amendment, that CPD should have known that failure to train and supervise would lead to similar constitutional violations, and that Garcia's actions were the result of the failure to adequately train and supervise. The sole element absent from Coble's Complaint is that the violation arose under circumstances constituting a recurring situation with which police officers must deal. It would be disingenuous for this Court to deny that police officers are frequently tasked with searching vehicles for the presence of narcotics and frequently do so with the assistance of trained canines. Therefore, this Court takes judicial notice of the second element of the *Allen* test as it relates to Coble's Complaint. *See* FED. R. EVID. 201(b)(1) (allowing courts to take judicial notice of facts "generally known within the territorial jurisdiction of the trial court . . . ."); *see also Worthy v. United States*, 409 F.2d 1105, 1111-12 (D.C. Cir. 1968) (taking judicial notice of the "sufficiently notorious" fact that vagrancy arrests were often a pretext for police to conduct interrogations and searches).

At this stage in the proceedings, Coble has met the pleading requirements for his allegation

16

that CPD failed to adequately train and supervise its officers regarding the requirements of the Fourth Amendment as it relates to searches, including searches by canines. This aspect of Coble's claim against CPD withstands the Motion to Dismiss, though the remainder of this claim against CPD is dismissed with prejudice.

### F.   Count VI: Retaliation by Defamation Claim (Garcia)

Coble's final claim against the CPD Defendants is an allegation that Garcia violated his First Amendment rights by retaliating against him for protected activity. (Doc. 1 at ¶¶ 82-88.) Coble claims that Garcia defamed him in the community because Coble reported the damage to his vehicle to Julian and the Mayor. (*Id.* at ¶¶ 82, 87.) He claims damages in the form of harm to his reputation, damage to his credibility, and termination from his job. (*Id.* at ¶¶ 82, 86, 88.) The CPD Defendants contend that no legal cause of action exists under the First Amendment based on retaliatory defamation and that reputational interests are not constitutionally protected. (Doc. 6 at 15.)

To establish a retaliation claim under 42 U.S.C. § 1983 where the defendant is not the plaintiff's employer, a plaintiff must prove that (1) he was engaged in constitutionally protected activity; (2) that the defendant's actions caused him "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) that the defendant acted at least partially as a response to the plaintiff's constitutionally protected conduct. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 729 (10th Cir. 2011) (quoting *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir.2000)).

The law governing some aspects of the First Amendment relevant to Coble's claim is unsettled. For example, it is clear that speech on a matter of public concern is protected. *See Connick v. Myers*, 461 U.S. 138, 145-47 (1983). However, the Tenth Circuit recently declined to determine whether, under the test stated above, speech must be on a matter of public importance to constitute protected activity. *Leverington*, 643 F.3d at 734. In *dicta*, the court expressed "substantial doubt" that speech not on a matter of public concern is protected. *Id.* at 733. The court quoted from a recent Supreme Court decision to explain the importance of First Amendment protection for speech on

matters of public concern and to indicate that matters of private significance have far less importance and, therefore, far fewer protections. *Id.* (quoting *Snyder v. Phelps*, --- U.S. ----, 131 S. Ct. 1207, 1215-16 (2011)). However, the Sixth Circuit directly addressed whether the public concern limitation applies to First Amendment retaliation claims by non-employees and concluded that it does not. *Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 586-88 (6th Cir. 2008). The circuits are also divided as to whether a plaintiff must allege a more tangible interest in addition to reputation to bring a First Amendment retaliation claim. *Compare Gini v. Las Vegas Met. Police Dep't*, 40 F.3d 1041, 1045 (9th Cir. 1994) (citations omitted) ("[T]he constricture . . . that damage to reputation is not actionable under § 1983 unless it is accompanied by 'some more tangible interests,' cannot be avoided by alleging that defamation by a public official occurred in retaliation for the exercise of a First Amendment right."); *with Mattox v. City of Forest Park*, 183 F.3d 515, 521 n.3 (6th Cir. 1999) (citations omitted) ("Analysis of retaliation cases under the First Amendment is distinct, and the effect of public disclosure of damaging information about an individual may be enough to trigger constitutional protection . . . .").

However, Coble's First Amendment claim is deficient in its own right, requiring this Court to leave these issues unresolved. First of all, this Court cannot determine whether Coble's speech touched on a matter of public concern due to the lack of factual specificity in the Complaint. A matter of public concern is one that is "of interest to the community, whether for social, political, or other reasons." *Leverington*, 643 F.3d at 727 (quoting *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205 (10th Cir. 2007)). To determine whether Coble's statements were on a matter of public concern, "what is actually said on the topic is the crux of the . . . inquiry." *Id.* (quoting *Wren v. Spurlock*, 798 F.2d 1313, 1317 n.1 (10th Cir. 1986)). In his Complaint, Coble only mentions the general topic of conversation; he fails to include any allegation about what was actually

said to Julian and the Mayor. Thus, Coble has failed to demonstrate that his statements were on a matter of public concern.

The Complaint also fails to provide the Defendants with sufficient notice of the allegations against them because it lacks factual specificity as to the details of Coble's conversations with Julian and the Mayor. Coble does not allege the time, date, location or substance of his interactions with these individuals. *Twombly* and *Robbins* require a plaintiff to include the facts important to a plaintiff's claims, including dates and locations of events, in order to put the defendants on notice. *Twombly*, 550 U.S. at 565 n.10; *Robbins*, 519 F.3d at 1248 (citations omitted). Because this information is not included, Coble fails to state a plausible claim for relief under *Twombly*'s pleading requirements.

Finally, Coble fails to allege that the injuries suffered would chill an ordinary person from exercising his right to free speech. *See Leverington*, 643 F.3d at 729. He attempts to bypass this requirement in his Response to the Motion to Dismiss, claiming that he need only allege "that he suffered an adverse action . . . ."[6] (Doc. 11 at 10 (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) (quotation omitted) (internal quotation marks omitted)).) That statement does not comport with the full requirement for a retaliation claim, which must include an allegation that the adverse action had a chilling effect on speech.

The only one of Coble's allegations that is remotely similar to an allegation regarding the chilling impact of Garcia's actions is his statement that "[t]he labeling of an individual as a 'drug

---

[6] The Sixth Circuit did omit the requirement that the injury have a chilling effect on speech from the elements for a First Amendment retaliation claim in at least one case. *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004). However, the sentence of that opinion following the list of elements reads, "In order for the retaliation to be actionable, it must be capable of deterring a person of ordinary firmness from exercising his or her right to access the courts." *Id.* (quotation omitted) (internal quotation marks omitted).

dealer' by a police officer known in the community constitutes defamation per se. It is highly offensive to any reasonable person." (Doc. 1 at ¶ 86.) However, defamation *per se* under state law does not, in and of itself, establish a chilling effect on speech. *Zherka v. Amicone*, 634 F.3d 642, 646 (2d Cir. 2011); *see also Zutz v. Nelson*, 601 F.3d 842, 849 (8th Cir. 2010); *Mezibov v. Allen*, 411 F.3d 712, 722 (6th Cir. 2005).

A plaintiff is required to allege the elements of his claim, and he must also provide sufficient specificity in his factual allegations to both demonstrate the claim's plausibility and place the defendants on notice. Because Coble has failed to make specific allegations about his protected speech and because he failed to allege the required second element for a retaliation claim, the Motion to Dismiss as to this count is granted. This claim is dismissed without prejudice for failure to state a claim for relief under Federal Rule of Civil Procedure 8(a). *See Robbins*, 519 F.3d at 1253-54.

## IV.     CONCLUSION

The Court grants the CPD Defendants' Motion to Dismiss as to Coble's procedural due process claim, Count I, and substantive due process claim, Count IV. Coble has not alleged that he was denied a meaningful postdeprivation remedy with regard to the damage to his vehicle. Coble has also failed to demonstrate a more tangible interest in addition to his interest in his reputation and so has not stated a constitutionally protected liberty interest. Counts I and IV, therefore, are dismissed with prejudice.

The Court grants in part and denies in part the CPD Defendants' Motion to Dismiss Coble's Fourth Amendment claims, Counts II and III. Because he consented to the search, Coble and his vehicle were not seized; therefore, all claims based on an alleged seizure are dismissed with prejudice. However, Coble has plead all elements necessary to state a claim that the search of his vehicle exceeded the scope of his consent and was conducted in an unreasonable manner. Therefore,

the Motion to Dismiss this portion of Counts II and III is denied.

As to Coble's training and supervision claim, Count V, the Motion to Dismiss is granted in part and denied in part. The Motion is granted to the extent that Coble's Complaint alleged constitutional violations based on procedural due process, substantive due process, and unreasonable seizure. However, Coble is plausibly entitled to relief pursuant to his claim against CPD for inadequate supervision and training based on the remaining Fourth Amendment violation.

Finally, the Motion to Dismiss Coble's First Amendment retaliation claim, Count VI, is granted. Coble failed to allege all elements of his claim and to provide sufficient factual specificity in his Complaint. Accordingly, this claim is dismissed without prejudice.

Because all claims against Defendant Julian are dismissed with prejudice pursuant to this Order, the Clerk of Court is directed to terminate him as a Defendant in this action.

**THEREFORE**,

**IT IS ORDERED** that CPD Defendants' Motion to Dismiss (Doc. 6) is **GRANTED IN PART and DENIED IN PART**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**