IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUSSELL COBLE,

        Plaintiff,

vs.                                                No. CIV 11-0109 RB/KBM

THE GEO GROUP, INC., Northeast
New Mexico Correctional Facility,
CLAYTON POLICE DEPARTMENT, and
RAUL GARCIA and SCOTT JULIAN,
in their individual capacities,

        Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant The GEO Group, Inc.'s (GEO's) Motion for Partial Summary Judgment and Memorandum of Law in Support, (Doc. 44), filed on October 25, 2011. Jurisdiction arises under 28 U.S.C. § 1331. Briefing is complete. Having considered the submissions of counsel, the record, and relevant law, the Court grants the motion.

**I.    Background.**

On February 3, 2011, Plaintiff (Mr. Coble) filed his Complaint for Damages from Violations of Constitutional and Civil Rights, Breach of Implied Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Wrongful Termination. (Doc. 1). Therein, Mr. Coble alleged claims for breach of implied employment contract (Count VII), breach of the covenant of good faith and fair dealing (Count VIII), and wrongful termination (Count IX) against GEO, as well as factually and legally distinct claims, including claims under 42 U.S.C. §1983, against the Clayton Police Department, Raul Garcia, and Scott Julian.

In its Motion for Partial Summary Judgment, GEO moves for summary judgment on Counts VII, VIII, and IX, contending that Mr. Coble was an at-will employee, GEO complied with its policies and procedures, there was no breach of the covenant of good faith and fair dealing as there was no employment contract, and the wrongful termination claim was unsupported. (Doc. 44). Mr. Coble responded that GEO's Employee Handbook and Policy and Procedure Manual created an implied employment contract and GEO breached this implied contract and its covenant of good faith and fair dealing by terminating his employment. (Doc. 47).

## II. Standard.

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Upon meeting this burden, the burden shifts to the nonmovant to show specific facts supporting a genuine issue for trial as to all of the essential elements of her case. *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) ("The party opposing the motion must present sufficient evidence in specific, factual form . . . ."). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

## III. Statement of Facts.

The Court must view the facts in a light most favorable to Mr. Coble, the non-moving

party. *See Turner*, 563 F.3d at 1142. Thus, all reasonable inferences are drawn and factual ambiguities are resolved in Mr. Coble's favor.

GEO operates the Northeast New Mexico Correctional Facility ("NENMCF"), located near Clayton, New Mexico. (Compl. ¶3). On April 5, 2010, Mr. Coble started working for GEO as a cook supervisor at NENMCF. (Compl. ¶11). Before he started work, Mr. Coble signed an Employee Handbook Acknowledgment stating that he had received, read, and understood the GEO Employee Handbook and understood "that GEO is an 'at will' employer and as such, employment with GEO is not for a fixed term or definite period and may be terminated at the will of either party, with or without prior notice." (Def. Ex. A). Mr. Coble affirmed that he understood "that nothing contained in the Handbook may be construed as creating a promise of future benefits or a binding contract with GEO for benefits or any other purpose." (Def. Ex. A). Mr. Coble also signed acknowledgments that he had received, read, and fully understood the polices and procedures of GEO, including standards of employee conduct and code of ethics. (Def. Ex. B).

The GEO Handbook contains the following disclaimer:

> The language used in this policy is not intended to create, nor is it to be construed by any or all of its employees, to give any employee the right to continued employment by GEO. The GEO Group, Inc., reserves the right to dismiss any employee at any time, with or without cause, and with or without notice, except where in violation of federal or state law.

(Def. Ex. C).

The GEO Handbook states:

> It is the policy of the GEO Group, Inc. to administer discipline in a fair and consistent manner. These guidelines and procedures are adopted to guide the internal operations of the facility. They do not constitute an employment contract or a guarantee of continued employment. The Corporation reserves the right to terminate any employee at will.

(Def. Ex. D).

Mr. Coble testified at his deposition that he did not remember any GEO employee making an agreement with him regarding his employment.  (Def. Ex. E).

The GEO Handbook prohibits GEO employees from engaging in illegal activities and states: "Employee involvement in illegal activities renders the employee subject to disciplinary action up through termination."  (Def. Ex. C).  Notably, GEO employees are prohibited from maintaining any social or personal relationship with all inmates and parolees of the New Mexico Department of Corrections.  (Def. Ex. C).  GEO employees must "avoid any action(s) which might result in or create the appearance of affecting adversely the confidence of the public in the integrity of the facility."  (Def. Ex. C).  Additionally, the GEO Handbook provides for verbal counseling to correct minor misbehavior and for written counseling when unintentional carelessness results in a violation or when verbal counseling has failed.  (Def. Ex. D).  If an employee receives any three sustained violations within a twelve-month period, the Handbook provides that the employee may be recommended for dismissal.  (Def. Ex. D).

On July 12, 2010, Mr. Coble received a verbal counseling for failing to call in two hours before his shift.  (Def. Ex. F).  On the same day, Mr. Coble received a verbal counseling for failure to complete daily paperwork.  (Def. Ex. G).  On August 2, 2010, Mr. Coble received a written counseling for use of profane and abusive language with inmates.  (Def. Ex. H).  On August 3, 2010, Mr. Coble received a written counseling for allowing an inmate to come into the kitchen without proper procedures.  (Def. Ex. I).  On the same day, Mr. Coble received a written counseling for getting too close to an inmate.  (Def. Ex. J).

On August 6, 2010, Mr. Coble received a text message from Ryan Cruz, a high school

friend of Mr. Coble.[1]  (Pl. Ex. 2, Pl. Dep. at 150).  Mr. Coble recalled that Mr. Cruz had been involved with drugs while in high school, but was trying to get his life straight.  (Pl. Dep. at 152; 153-54).  Mr. Cruz asked Mr. Coble to act as a designated driver and drive Mr. Cruz in Mr. Coble's truck to a birthday party in Dumas, Texas.  (Pl. Dep. at 155).  Mr. Coble was asked to be the designated driver because he does not like to drink.  (Pl. Dep. at 155).  Dumas is an hour-and-a-half drive from Clayton. (Pl. Dep. at 157).

When Mr. Coble picked up Mr. Cruz, Nick Valdez was with Mr. Cruz.  (Pl. Dep. at 156).  Mr. Coble knew that Mr. Valdez was from Clayton and Mr. Coble had heard rumors that Mr. Valdez was a troublemaker.  (Pl. Dep. at 157).  At the time, Mr. Coble was not aware that Mr. Valdez was a former inmate of the New Mexico Department of Corrections.  (Def. Exs. N & M). When they arrived in Dumas, Mr. Cruz bought Mr. Coble a chicken sandwich at a McDonald's drive through.  (Pl. Dep. at 158).  Mr. Coble then drove Mr. Cruz and Mr. Valdez to the party, which was at the Red Lantern Club in Dumas.  (Pl. Dep. at 159).  Mr. Cruz and Mr. Valdez went into the bar and Mr. Coble remained in his truck, ate the sandwich, and listened to music.  (Pl. Dep. at 159-60).  After a while, Mr. Coble became nauseous and started to vomit.  (Pl. Dep. at 160).

At about 2:00 a.m. on August 7, 2010, a Dumas police officer found Mr. Coble vomiting in the bed of his pick up truck.  (Def. Ex. K).  According to the police report, Mr. Coble refused to identify himself, and the officer arrested Mr. Coble due to his high level of intoxication.  (Def. Ex. K).  Mr. Cruz and Mr. Valdez approached the pick up truck.  (Def. Ex. K).  Mr. Valdez identified himself and Mr. Coble to the police officer and explained that the truck belonged to Mr.

---

[1] At the time, Mr. Coble was nineteen years old, and Mr. Cruz was eighteen years old. (Def. Ex. K).

Coble. (Def. Ex. K). Mr. Cruz was intoxicated and refused to identify himself. (Def. Ex. K). A search revealed Mr. Cruz's identification card and a bag containing .08 grams of cocaine in his front pocket. (Def. Ex. K). Mr. Cruz was arrested for possession of a controlled substance and public intoxication. (Def. Ex. K). Mr. Coble was charged with public intoxication. (Def. Ex. K). On September 8, 2010, Mr. Coble appeared in court on the charge of public intoxication. (Pl. Ex.1). Mr. Coble received a deferred sentence and the charges were ultimately dismissed. (Pl. Ex.1).

On August 9, 2010, Mr. Coble reported his arrest to the Warden of NENMCF. (Compl. ¶ 16). GEO conducted an investigation into the incident and Mr. Coble answered written questions. (Def. Ex. L). On October 4, 2010, GEO placed Mr. Coble on administrative leave. (Def. Ex. L). GEO prepared a Disciplinary Incident Report on the incident. (Def Ex. N). On October 7, 2010, Mr. Coble acknowledged receipt of a Disciplinary Hearing Notification, advising him that a hearing would occur on October 11, 2010, on "behavior, to include off-duty conduct, which renders continued employment contrary to the best interests of GEO." (Def. Ex. O).

Associate Warden C. Michael Martin conducted the hearing on October 11, 2010. (Def. Ex. P). The Disciplinary Hearing Report listed the five prior violations from July 12, 2010, August 2, 2010, and August 3, 2010, namely (1) improper call-in procedure, (2) failure to complete daily paperwork, (3) behavior with inmate that could be construed as inappropriate, (4) profane/abusive language with inmates, and (5) allowing an inmate in an unauthorized area. (Def. Ex. P). Associate Warden Martin wrote that Mr. Coble was intoxicated, refused to provide his identification to police, was found in the company of one convicted ex-felon, and one person who had cocaine in his possession. (Def. Ex. P). Associate Warden Martin found that a violation

of GEO's policies had occurred and recommended that Mr. Coble's employment with GEO be terminated. (Def. Ex. P). On November 16, 2010, GEO sent Mr. Coble a letter advising that his employment with GEO had been terminated. (Def. Ex. Q).

IV.     **Discussion.**

    A.     **Count VII - The Claim for Breach of an Implied Contract of Employment**

In Count VII of his Complaint, Mr. Coble alleges that GEO maintained and published personnel policies that created an implied contract of employment and GEO violated these policies in effectuating his termination and by terminating his employment without cause. GEO moves for summary judgment on this claim, contending that Mr. Coble was an at-will employee, and, even if an implied contract of employment existed, GEO complied with its policies and procedures. Mr. Coble responds that questions of fact preclude summary judgment on this issue.

New Mexico follows the general rule that "an employment contract is for an indefinite period and is terminable at the will of either party unless the contract is supported by consideration beyond the performance of duties and payment of wages or there is an express contractual provision stating otherwise." *Hartbarger v. Frank Paxton Co.*, 115 N.M. 665, 668, 857 P.2d 776, 779 (1993) (citation omitted). An at-will employment relationship "can be terminated by either party at any time for any reason or no reason, without liability." *Id*. "New Mexico courts have recognized two additional exceptions to the general rule of at-will employment: wrongful discharge in violation of public policy (retaliatory discharge), and an implied contract term that restricts the employer's power to discharge." *Id*.

An implied employment contract may be found in written or oral representations, in the conduct of the parties, or in a combination of representations and conduct. *See Newberry v.*

*Allied Stores, Inc.*, 108 N.M. 424, 427, 773 P.2d 1231, 1234 (1989).  When an implied employment contract is based on language in an employee handbook, the handbook must be sufficiently specific to change the at-will employment relationship and give rise to reasonable expectations of the employee.  *Hartbarger*, 115 N.M. at 672, 857 P.2d at 783. "Employers are certainly free to issue no personnel manual at all or to issue a personnel manual that clearly and conspicuously tells their employees that the manual is not part of the employment contract and that their jobs are terminable at the will of the employer with or without reason."  *Lukoski v. Sandia Indian Mgmt. Co.*, 106 N.M. 664, 666-67, 748 P.2d 507, 509-10 (1988) (internal quotation omitted).  "Such actions . . . instill no reasonable expectations of job security and do not give employees any reason to rely on representations in the manual.  *Id*.

The question of "[w]hether an employee handbook has modified the employment relationship is a question of fact to be discerned from the totality of the parties' statements and actions regarding the employment relationship."  *Lukoski*, 106 N.M. at 666, 748 P.2d at 509. "Evidence relevant to this factual decision includes the language used in the personnel manual as well as the employer's course of conduct and oral representations regarding it."  *Lukoski*, 106 N.M. at 666, 748 P.2d at 509.  However, "because an employee's expectation based on an employer's words or conduct must meet a certain threshold of objectivity, an employer may be entitled to judgment as a matter of law if the employee's expectations are not objectively reasonable."  *West v. Wash. Tru Solutions, LLC*, 147 N.M. 424, 426, 224 P.3d 651, 653 (Ct. App. 2009) (internal quotation omitted).

GEO disclaimed the existence of an implied employment contract in its Handbook.  The New Mexico Court of Appeals has "declined to give dispositive effect to disclaimers, reasoning

that a combination of disclaimers and promissory statements on the same subject results in a question of fact for the jury." *Mealand v. E.N.M. Med. Ctr.*, 131 N.M. 65, 70, 33 P.3d 285, 290 (Ct. App. 2001). Rather, "an implied contract can still exist in spite of a disclaimer, where the employer's conduct reasonably leads employees to believe that they will not be terminated without just cause and a fair procedure." *Kiedrowski v. Citizens Bank*, 119 N.M. 572, 575, 893 P.2d 468, 471 (Ct. App. 1995). The issue is "whether, on the evidence before the [district] court, a reasonable jury could find that [Employer's] words and conduct support an objectively reasonable expectation that its employees will be dismissed only in accordance with specified procedures and for specified reasons." *West*, 147 N.M. at 426, 224 P.3d at 653 (internal quotation omitted).

In *West*, the New Mexico Court of Appeals observed that the employee handbook and manager's reference guide "contained representations that could reasonably be construed to assure employees that they would be terminated only for cause and after the use of certain remedial disciplinary procedures." *West*, 147 N.M. at 426, 224 P.3d at 653. The handbook specified "three types of misconduct, with numerous detailed examples of each, and provide[d] the consequences for such acts." *Id*. The manager's reference guide set out an elaborate system of progressive discipline and performance improvement plans and required managers to contact the human resources department for assignment of a "specialist advisor." *West*, 147 N.M. at 427, 224 P.3d at 654. The reference guide explained that the employer "applie[d] processes within progressive discipline to provide for application of a test for just cause." *Id*. The reference guide in *West* went so far as to acknowledge that "[a]though promising to use a just cause test might undermine the at-will nature of employment, some employers choose to apply the test in order to

create a sense of fairness." *West*, 147 N.M. at 427, 224 P.3d at 654.  The plaintiff in *West* presented evidence that the employer expected managers to use the progressive disciplinary procedures outlined in the handbook and the guide, employees relied on the progressive discipline system, and the employer's practice was to discharge an employee only for cause and after first giving an employee the opportunity to remedy the problem through the progressive disciplinary process.  *West*, 147 N.M. at 428, 224 P.3d at 655.  Under the facts of *West*, the New Mexico Court of Appeals held that the conflicting evidence created a genuine issue of material fact as to the existence of an implied employment contract.

Unlike the written personnel polices at issue in *West*, the GEO Handbook does not contain representations that could reasonably be construed to assure employees that they would be terminated only for cause and after the use of specific remedial disciplinary procedures. The GEO Handbook contains no specific examples or detailed consequences and does not require managers to impose progressive discipline.  The GEO Handbook includes no references to performance improvement plans or specialist advisors.  While the GEO disciplinary policy contemplates documentation of infractions, it does not promise progressive discipline.  On the contrary, the GEO Handbook specifically states that the procedures are guidelines "to administer discipline in a fair and consistent manner" and the "procedures are adopted to guide the internal operations of the facility." (Def. Ex. C).  Given this language, the "written personnel policy cannot be said to have created any reasonable expectation of an implied contract." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 131 N.M. 607, 616, 41 P.3d 333, 342 (2001) (quotation and citation omitted).  Mr. Coble has submitted no evidence that GEO's practice was to discharge employees only for cause or that it was bound to follow any specific remedial disciplinary procedures.  Based on the

evidence of record, construed in the light most favorable to Mr. Coble, no reasonable finder of fact could conclude that the GEO Handbook instilled a reasonable expectation of an implied employment contract under New Mexico law. *See Lukoski*, 106 N.M. at 667, 748 P.2d at 510. In that a reasonable jury could not find that GEO's words and conduct support an objectively reasonable expectation that its employees would be dismissed only in accordance with specified procedures and for specified reasons, GEO is entitled to summary judgment on the breach of implied employment contract claim.

In any event, GEO complied with its policies and procedures. The GEO Handbook specifically prohibits GEO employees from engaging in illegal activities or maintaining any social or personal relationship with inmates and parolees of the New Mexico Department of Corrections. Although Mr. Coble received a deferred sentence and the charges were dismissed, the police report was evidence that Mr. Coble was intoxicated. Mr. Coble does not contest that Mr. Valdez was a former inmate and Mr. Cruz had cocaine in his pocket. It bears underscoring that GEO employees must "avoid any action(s) which might result in or create the appearance of affecting adversely the confidence of the public in the integrity of the facility." (Def. Ex. C). The circumstances of the arrest as recounted in the police report are public record. Plaintiff's arrest for public intoxication in a bar parking lot at 2:00 a.m., while accompanied by a former inmate and a cocaine user, would undermine the confidence of the public in the NENMCF. Finally, the GEO Handbook provides that if an employee receives any three sustained violations within a twelve-month period, the employee may be recommended for dismissal. Mr. Coble received five violations within six months. While the termination letter did not reference Mr. Coble's disciplinary record, the Disciplinary Hearing Report listed the five prior violations. Simply put,

11

the record establishes that GEO followed its policies and procedures in terminating Mr. Coble's employment. Thus, even if the GEO Handbook created an implied employment contract, GEO did not breach the alleged contract.

### B.   Count VIII - The Claim for Breach of the Covenant of Good Faith and Fair Dealing

Unlike the law of some states, New Mexico law does not recognize the implied covenant of good faith and fair dealing as an exception to the at-will employment doctrine. *See Melnick v. State Farm Mut. Auto. Ins. Co.*, 106 N.M. 726, 730, 749 P.2d 1105, 1109 (1988). Rather, New Mexico law recognizes an implied duty of good faith and fair dealing with respect to the performance and enforcement of contracts. *Sanders v. FedEx Ground Package Sys., Inc.*, 144 N.M. 449, 188 P.3d 1200, 1203 (2008) (observing that "every contract imposes a duty of good faith and fair dealing on the parties with respect to the performance and enforcement of the terms of the contract."). This duty does not apply in the absence of a contract. *See Azar v. Prudential Ins. Co. of Am.*, 133 N.M. 669, 68 P.3d 909, 925 (Ct. App. 2003) (explaining that the existence of this covenant "depends upon the existence of an underlying contractual relationship"). Mr. Coble was an at-will employee who had neither an express nor an implied contract with GEO. Because no contract existed, no covenant of good faith and fair dealing existed that GEO could have breached. Construed in the light most favorable to Mr. Coble, the record establishes that GEO is entitled to summary judgment on this claim.

### C.   Count IX - The Claim for Wrongful Termination

GEO moved for summary judgment on this claim, pointing out that the Complaint does not allege that Mr. Coble was terminated for engaging in acts which public policy has authorized or encouraged. Mr. Coble did not respond to this argument.

Wrongful termination, also known as retaliatory discharge, provides a "narrow exception to the terminable at-will rule" when an employee is terminated in violation of public policy. *Silva v. Albuquerque Assembly & Distrib. Freeport Warehouse Corp.*, 106 N.M. 19, 21, 738 P.2d 513, 515 (1987). In order to establish a claim for retaliatory discharge, an employee must demonstrate that (1) the employee was discharged because he performed an act that public policy has authorized or encouraged, or refused to perform an act that public policy would prohibit; (2) the employer either knew or suspected that the employee's act involved a protected activity; (3) there was a causal connection between the employee's protected actions and the employer's act of discharging him; and (4) the employee suffered damages. *Weidler v. Big J Enters. Inc.*, 124 N.M. 591, 598-99, 953 P.2d 1089, 1097-98 (1997). "The linchpin of a cause of action for retaliatory discharge is whether by discharging the complaining employee the employer violated a clear mandate of public policy." *Shovelin v. Cent. New Mexico Elec. Coop., Inc.*, 115 N. M. 293, 303, 850 P. 2d 996, 1006 (1993). The plaintiff must further demonstrate a sufficient nexus between the asserted public policy and the discharge. *Id.*

The Complaint includes no allegations that Mr. Coble was discharged for performing an act that public policy has authorized or encouraged, or refusing to perform an act that public policy would prohibit. Construed in the light most favorable to Mr. Coble, the record establishes that GEO is entitled to summary judgment on the wrongful termination claim.

**THEREFORE,**

**IT IS ORDERED** that Defendant The GEO Group, Inc.'s Motion for Partial Summary Judgment and Memorandum of Law in Support, (Doc. 44), filed on October 25, 2011, is **GRANTED.**

**IT IS FURTHER ORDERED** that summary judgment will be entered in favor of Defendant The GEO Group, Inc. and against Plaintiff.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**