IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**RUSSELL COBLE,**

      **Plaintiff,**

vs.                                              **No. CIV 11-0109 RB/KBM**

**THE GEO GROUP, INC., Northeast**
**New Mexico Correctional Facility,**
**CLAYTON POLICE DEPARTMENT, and**
**RAUL GARCIA and SCOTT JULIAN,**
**in their individual capacities,**

      **Defendants.**

**MEMORANDUM OPINION AND ORDER**

      **THIS MATTER** is before the Court on Defendants City of Clayton and Raul Garcia's (the Clayton Defendants') Motion for Summary Judgment, (Doc. 52), filed on January 5, 2012. Jurisdiction arises under 28 U.S.C. § 1331. Briefing is complete. Having considered the submissions of counsel, the record, and relevant law, the Court grants the motion.

**I.**    **Background**

      On February 3, 2011, Plaintiff (Mr. Coble) filed his Complaint for Damages from Violations of Constitutional and Civil Rights, Breach of Implied Contract, Breach of the Covenant of Good Faith and Fair Dealing, and Wrongful Termination. (Doc. 1). Therein, Mr. Coble alleged, *inter alia,* that Clayton Police Officer Raul Garcia damaged his truck during a canine search and asserted claims for violation of his rights under the United States Constitution against Officer Garcia, the Clayton Police Department, and Clayton Police Chief Scott Julian pursuant to 42 U.S.C. §1983, as well as factually and legally distinct claims under state law against his former employer, The GEO Group, Inc. ("GEO"). (Doc. 1). On August 15, 2011, the

Court granted the Clayton Defendants' Motion to Dismiss in part, and dismissed Counts I, IV, VI, parts of Counts II, III, and V, as well as the claims against Police Chief Julian. (Doc. 38). On May 18, 2012, the Court granted GEO's Motion for Partial Summary Judgment as to all claims against GEO. (Doc. 66).

The Clayton Defendants now move for summary judgment on all remaining claims, which consist of portions of Count II for Fourth Amendment unreasonable search and seizure, Count III for Fourth Amendment use of excessive force, and Count V for negligent supervision and training under 42 U.S.C. §1983. (Doc. 52). As grounds for their motion, the Clayton Defendants contend that Mr. Coble lacks standing, the damage to his truck was *de minimis*, and his claims are not cognizable. (Doc. 52). Mr. Coble refutes each of these contentions. (Doc. 59).

**II.     Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In cases where the moving party will not bear the burden of persuasion at trial, it bears the initial responsibility of identifying an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Upon meeting this burden, the burden shifts to the nonmovant to show specific facts supporting a genuine issue for trial as to all of the essential elements of her case. *Muñoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000) ("The party opposing the motion must present sufficient evidence in specific, factual form . . . ."). When applying this standard, the court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1142 (10th Cir. 2009).

### III.    Statement of Facts

The Court must view the facts in a light most favorable to Mr. Coble, the non-moving party.  *See Turner*, 563 F.3d at 1142.  Thus, all reasonable inferences are drawn and factual ambiguities are resolved in Mr. Coble's favor.

GEO operates the Northeast New Mexico Correctional Facility ("NENMCF"), located near Clayton, New Mexico.  (Compl. ¶3).  Mr. Coble was employed by GEO as a cook supervisor at NENMCF.  (Compl. ¶11).  On September 26, 2010, NENMCF summoned the Clayton Police Department due to suspicions that visitors were trying to bring drugs into the facility.  (Compl. ¶ 19).  Clayton Police Officer Garcia responded to the call with K-9 "Trooper," a drug-detection canine.  (Compl. ¶ 20; Def. Ex. 4; Def. Ex. 6, Deposition of R. Garcia at 12-14).  Trooper was trained to indicate the presence of narcotics by pawing at the location of the narcotics.  (Garcia Dep. at 14).

On September 26, 2010, Officer Garcia walked Trooper throughout the NENMCF parking lot.  (Compl. ¶ 20).  Trooper alerted on three vehicles in the prison lot.  (Garcia Dep. at 48).  The third vehicle on which Trooper alerted that day was Mr. Coble's dark blue 2005 Chevy Silverado pick up truck. (Garcia Dep. at 14, 48).  Trooper alerted to the truck by pawing at the passenger side, rear passenger tail light, and the driver's side.  (Garcia Dep. at 14).  Officer Garcia noticed scratches on the truck after the alert.  (Garcia Dep. at 16).  When he was advised that the canine had indicated that narcotics were in his truck, Mr. Coble consented to a search of his truck. (Compl. ¶ 21).  NENMCF personnel searched the interior of the truck and found no contraband.  (Garcia Dep. at 28).  After the alert, Officer Garcia put Trooper in his police unit.  (Garcia Dep. at 32).

Mr. Coble has owned the truck since he began work at NENMCF in April 2010. (Def. Ex. 1, Deposition of R. Coble at 13). Aurora Coble or Matthew Coble, who are Mr. Coble's mother and brother, purchased the truck at a dealership in Amarillo, Texas in 2010. (Coble Dep. at 14). Mr. Coble, who was nineteen years old in 2010, was not present when the truck was purchased. (Coble Dep. at 14; Doc. 44, Def Ex. K). The title lists the owners of the truck as Aurora Coble or Matthew Coble. (Def. Ex. 2; Coble Dep. at 14). The title also states that the truck is subject to a lien held by First State Bank. (Def. Ex. 2). Mr. Coble makes monthly payments of $272 to his mother and brother for the truck. (Coble Dep. at 14). In 2010, Mr. Coble was the exclusive driver of the truck, except when he occasionally loaned the truck to his landlord. (Coble Dep. at 15).

Mr. Coble testified in his deposition that the dog left scratches on the door, the pickup bed, and the tail light areas of the truck. (Pl. Ex. A, Coble Dep. at 46). Mr. Coble described these scratches as light scratches on the top coat that did not go through the dark blue paint. (Coble Dep. at 47-48). Mr. Coble obtained an estimate from Gordon's Body Shop of Clayton that the cost to buff the "dog marks" would be $145.63. (Def. Ex. 2).

**IV.   Discussion.**

    **A.   Mr. Coble has standing.**

The Clayton Defendants assert that Mr. Coble lacks standing to raise a Fourth Amendment challenge because his name does not appear on the title to the truck. In order to establish standing for a Fourth Amendment challenge to a vehicle search, the litigant bears the burden of showing that he had a "legitimate possessory interest in or lawful control over the car." *United States v. Valdez Hocker*, 333 F.3d 1206, 1209 (10th Cir. 2003) (quotation omitted).

"Because the focus of the inquiry is on reasonable expectations, however, a defendant need not submit legal documentation showing a chain of lawful custody from the registered owner to himself."  *Id.*  Mr. Coble has presented evidence that, while his mother and brother held legal title to the truck, Mr. Coble made regular payments to them and reasonably considered himself as the owner of the truck.  In that Mr. Coble has shown that he had a legitimate possessory interest in the truck, as well as lawful control of the truck, he has established standing to raise a Fourth Amendment challenge to the search.

**B.     The extent of the damage is not dispositive.**

The Clayton Defendants assert that Mr. Coble's excessive force claim is not cognizable because the damage to the truck was *de minimis*.  Mr. Coble responds that $145.63 in property damage to the truck was not *de minimis*.

The Fourth Amendment guarantees citizens the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."  U.S. Const. amend. IV.  To establish a section 1983 claim for excessive force, a plaintiff must show that the force used was excessive or unreasonable in light of the circumstances. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989).  In evaluating whether an officer's actions were reasonable, a court must bear in mind "the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation."  *Graham*, 490 U.S. at 397.

The Clayton Defendants rely on the Tenth Circuit's statement: "[w]e believe that a claim of excessive force requires some actual injury that is not *de minimis*, be it physical or emotional." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007).  The Clayton Defendants read this

5

language in isolation.  *Cortez* was a handcuffing case.  *See id*.  The Tenth Circuit has emphasized that, in excessive force cases concerning the manner of handcuffing, "the *Graham* factors are less helpful in evaluating the degree of force applied." *Koch v. City of Del City*, 660 F.3d 1228, 1247 (10th Cir. 2011) (*quoting Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009).  Specifically, in cases concerning the manner of handcuffing, "an examination of the resulting injury supplements our inquiry." *Fisher*, 584 F.3d at 897.  For this reason, the Tenth Circuit stated that, in order to succeed on a claim concerning the manner of handcuffing, a plaintiff must show "some actual injury that is not *de minimis*, be it physical or emotional." *Cortez*, 478 F.3d at 1129; *see also Fisher*, 584 F.3d at 899 (concluding that this standard applies "when the excessive force claim involves the officers' actions in applying handcuffs - a manner of handcuffing claim").  The language on which the Clayton Defendants rely is limited to handcuffing cases.  This matter does not involve handcuffing.  Rather, it involves property damage allegedly caused by a canine sniff.  Thus, the authority on which the Clayton Defendants rely is inapplicable.  Additionally, nominal damages are available in non-inmate §1983 cases when the plaintiff is unable to show actual injury.  *See Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1241 (10th Cir. 2010).  For these reasons, the dollar amount of the damage is not dispositive in this non-inmate §1983 case.

      **C.**    **The Fourth Amendment is inapplicable.**

Mr. Coble contends that Officer Garcia violated the Fourth Amendment when he allowed Trooper to scratch the truck during the canine sniff of his truck.  (Compl. ¶ 23).  The Fourth Amendment allegations are found in Counts II and III of the Complaint.  (Compl. ¶ 52-66).  Therein, Mr. Coble does not distinguish between the canine sniff and the ensuing consensual

search of his truck. While the briefs do not address this point, the record establishes that the damage to the truck, which consists of scratches to the exterior, occurred during the canine alert.

A canine sniff is not a "search" under the Fourth Amendment because it "does not expose noncontraband items that otherwise would remain hidden from public view," but rather "discloses only the presence or absence of narcotics, a contraband item." *United States v. Place*, 462 U.S. 696, 707 (1983). In other words, "[a] canine sniff itself does not implicate Fourth Amendment rights[.]" *United States v. Hunnicutt*, 135 F.3d 1345, 1350 (10th Cir. 1998). Therefore, Mr. Coble's Fourth Amendment rights were not infringed by the drug dog sniff on the exterior of the vehicle. *See Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (holding that where the officers did not extend the time necessary to resolve a lawful traffic stop, the use of a drug dog to sniff around the exterior of the car did not infringe the motorist's Fourth Amendment rights). The only remaining claims consist of portions of Count II for violation of the Fourth Amendment based on unreasonable search and seizure, Count III for violation of the Fourth Amendment based on use of excessive force, and Count V for negligent supervision and training arising out of these alleged Fourth Amendment violations. In that the Fourth Amendment is not implicated as a matter of law, the Clayton Defendants are entitled to summary judgment on all remaining claims.

**THEREFORE,**

**IT IS ORDERED** that Defendants City of Clayton and Raul Garcia's Motion for Summary Judgment, (Doc. 52), filed on January 5, 2012, is **GRANTED.**

**IT IS FURTHER ORDERED** that summary judgment will be entered in favor of the Clayton Defendants and against Plaintiff.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**